UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
M.C. and T.G., on behalf of themselves and
all similarly situated individuals,

     Plaintiffs,

  -v-           6:22-CV-00190

JEFFERSON COUNTY, NEW YORK;
COLLEEN M. O'NEILL, as the Sheriff of
Jefferson County, New York; BRIAN R.
McDERMOTT, as the Undersheriff of
Jefferson County; and MARK WILSON, as
the Facility Administrator of Jefferson County
Correctional Facility,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NEW YORK CIVIL LIBERTIES<br> UNION FOUNDATION<br>*Attorneys for Plaintiffs*<br>125 Broad Street, 19th Fl.<br>New York, New York 10004 | ANTONY P.F. GEMMELL, ESQ.<br>TERRY T. DING, ESQ.<br>MOLLY K. BIKLEN, ESQ. |
| BARCLAY DAMON LLP<br>*Attorneys for Defendants*<br>125 East Jefferson Street<br>Syracuse, New York 13202 | TERESA M. BENNETT. ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiff M.C.[1] ("M.C." or "plaintiff") is a recovering opioid user. He is currently incarcerated at Jefferson County Correctional Facility ("Jefferson Correctional"). Prior to his incarceration, plaintiff received daily methadone treatment prescribed by his physician. Although it is a controlled substance, methadone is approved by the U.S. Food and Drug Administration ("FDA") to treat Opioid Use Disorder ("OUD"), a medical condition "characterized by compulsive use" of opioid painkillers.

M.C. seeks preliminary relief enjoining Jefferson County, New York ("Jefferson County"), Colleen M. O'Neill, as the Sheriff of Jefferson County, Brian R. McDermott, as the Undersheriff of Jefferson County, and Mark Wilson, as the Facility Administrator of Jefferson Correctional (together, the "County Defendants") to provide M.C. with his daily prescribed methadone treatment during his period of incarceration in their custody. Defendants do not oppose plaintiff's motion.

---

[1] While they have not yet done so, plaintiffs note that they intend to seek the Court's permission to proceed under pseudonyms in an effort to avoid the "powerful stigma" associated with opioid use disorder. *See* Dkt. 1 at n.2. In anticipation of a motion to seal, the Court will use plaintiff's pseudonym throughout this order.

## II.   BACKGROUND

M.C. submitted a substantial amount of evidence in support of his request for relief.  Dkt. Nos. 5-10.  This includes declarations from: (1) plaintiff; (2) the Medical Director at the Credo Community Center for the Treatment of Addictions ("Credo"); (3) a retained expert on addiction medicine; (4) other inmates with OUD who were forced to stop their prescribed treatments while incarcerated at Jefferson Correctional.  *Id*.  The Court has considered all of this material, and summarizes the relevant portions below.

M.C. is a 29-year-old Croghan resident who is diagnosed with OUD.  He has been addicted to opioids since his teens, when he was prescribed Percocet for injuries he sustained in an accident.  Throughout his battle with opioids, plaintiff has attempted to stop using them many times, including through counseling, quitting "cold turkey," and treatment with both types of FDA-approved medications for OUD ("MOUD").  Besides methadone, each of these options has been unsuccessful at treating plaintiff's OUD.

Since M.C. started methadone treatment in 2017, it has proven more effective than anything at managing his OUD.  Plaintiff receives daily methadone treatment through Credo, a local treatment provider in Watertown, New York.  According to Daniel Pisaniello, the Medical Director at Credo, plaintiff is in active recovery from his addiction.  To that end, plaintiff has not used illicit opioids in two years.  Pisaniello confirms that

continued methadone treatment is medically necessary for plaintiff, and without it, he faces painful withdrawal symptoms and a heightened risk of relapse and death.

M.C.'s recovery has not been without setbacks. Like many with OUD, he has relapsed and been arrested several times. On March 2, 2022, plaintiff was sentenced to a plea deal, on a charge of burglary in the third degree, and committed to the County Defendants' custody the same day.

Jefferson Correctional, the jail that now houses plaintiff, maintains a blanket ban on agonist MOUD treatment, including methadone, for non-pregnant people in its custody. As a result of the ban, people receiving treatment with agonist MOUD, including methadone, must stop receiving the treatment abruptly upon entering the jail's custody. Twice before, M.C. has been denied methadone treatment while incarcerated, and both times he suffered "excruciating" withdrawal symptoms.

On February 24, 2022, anticipating M.C.'s impending incarceration following his upcoming March 2, 2022 sentencing, plaintiff, through counsel, sent the County Defendants a letter (the "February 24 Letter") requesting that they accommodate his disability by affording him continued access to his prescribed methadone treatment while detained at the jail. Given that plaintiff's detention was imminent, the February 24 Letter requested that the

County Defendants provide assurances by February 28, 2022 that they would permit plaintiff to continue his methadone treatment while incarcerated.

By March 2, 2022, the County Defendants had not responded to the February 24 Letter, prompting M.C. to move for a temporary restraining order and preliminary injunction. The same day, the Court granted plaintiff's motion for a temporary restraining order, and temporarily enjoined defendants to provide plaintiff with his daily prescribed methadone treatment during his period of incarceration. Moreover, the Court required plaintiff to serve defendants with its order, instructed defendants to advise the Court if they opposed plaintiff's request for a preliminary injunction, and set a deadline of March 10, 2022 for defendants to respond to plaintiff's motion for a preliminary injunction. Finally, in the event defendants opposed plaintiff's request for a preliminary injunction, the Court set a hearing for March 15, 2022, which it later adjourned to March 29, 2022. Ultimately, Defendants never informed the Court if they opposed plaintiff's request for a preliminary injunction, and did not file any opposition papers by the March 10, 2022 deadline.

On March 14, 2022, the Court received a letter (the "March 14 Letter") from counsel, which represented that it was "in the process of being retained" by the County Defendants. The March 14 Letter confirmed that M.C. had been committed to defendants' custody on March 2, 2022, and, notably, stated

that plaintiff had "been provided his requested treatment every day since he was committed to the County Defendants' custody, and the County Defendants [would] continue to provide that treatment while M.C. [was] in their custody."

On March 15, 2022, the Court received a letter (the "March 15 Letter") from M.C.'s counsel, which highlighted the County Defendants' lack of opposition to plaintiff's preliminary injunction motion and defendants' representation that plaintiff would receive continued access to methadone treatment while incarcerated. Given the parties' apparent agreement on relief, the March 15 Letter requested that the Court grant plaintiff's pending request and enter a preliminary injunction.

On March 25, 2022, the parties jointly submitted a proposal for a consent order granting M.C.'s pending request for a preliminary injunction.

### III. **DISCUSSION**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus, the party seeking injunctive relief must carry the burden to demonstrate "by a clear showing" that the necessary elements are satisfied. *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017); *see also P.G. v. Jefferson Cty., New York*, 2021 WL 4059409, at \*3 (N.D.N.Y. Sept. 7, 2021).

Generally, a movant must show: (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest.  *P.G.*, 2021 WL 4059409, at *3 (citing *Page v. Cuomo*, 478 F. Supp. 3d 355, 362–63 (N.D.N.Y. 2020)).

However, a heightened standard applies where the requested injunction: (1) is "mandatory"; i.e., it would alter the status quo; or (2) "will provide the movant with substantially all of the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits."  *P.G.*, 2021 WL 4059409, at *3 (citing *Page*, 478 F. Supp. 3d at 363).  When either condition is met, the movant must show a "clear" or "substantial" likelihood of success on the merits, and must make a "strong showing" of irreparable harm.  *Id.* (citing *Page*, 478 F. Supp. 3d at 363).

Upon review of M.C.'s motion, which defendants have not opposed, he has made a "clear" showing on each of the requirements necessary for injunctive relief.

First, the uncontested evidence establishes that withdrawal from methadone treatment is extremely painful, will cause a number of severe physical and mental symptoms, and will place plaintiff at a significantly

- 7 -

heightened risk of relapse and death. *See* Dkt. No. 4-1 at 12-15.[2] This amounts to a "strong showing" of irreparable harm. *See P.G.*, 2021 WL 4059409, at *4.

Second, M.C. has shown that he is substantially likely to succeed on his claims. For his claims under the Americans with Disabilities Act ("ADA"), plaintiff counts as a qualified individual with a disability because he has been diagnosed with OUD. Plaintiff is also "eligible" is eligible for the jail's medical services, making him qualified under the applicable statutes. *See* 42 U.S.C. § 12131(2) (defining "qualified individual with a disability"); 28 C.F.R. § 35.104 (same); *see generally Estelle v. Gamble*, 429 U.S. 97 (1976). And the County Defendants are a "public entity" within the meaning of Title II of the ADA. *See P.G.*, 2021 WL 4059409, at *4; *see also Hamilton v. Westchester County*, 3 F.4th 86 (2d Cir. 2021) (applying Title II against county jail).

Further, the unrebutted evidence shows that other forms of medical treatment have proven ineffective in treating M.C. His treating physician has prescribed methadone and concluded that it is medically necessary. For now, the evidence in the record establishes that the County has a policy of refusing methadone treatment to non-pregnant people. Under these

---

[2] Pagination corresponds with CM/ECF.

circumstances, a refusal to guarantee access to methadone treatment likely violates the ADA. *See P.G.*, 2021 WL 4059409, at *5.

M.C. is also substantially likely to succeed on his constitutional claims. The Eighth Amendment's prohibition on cruel and unusual punishment creates an "obligation [for the government] to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. The Eighth Amendment's deliberate indifference standard includes both objective and subjective prongs: "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' Second, the defendant must act with a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Plaintiff satisfies both components of this analysis: his OUD is a serious medical condition, and the County Defendants' blanket policy to refuse those in his position access to treatment could expose him to life-threatening harm.

Finally, the Court is satisfied that the balance of hardships and public interest tip in favor of plaintiff. The public interest lies with enforcing the Constitution and federal law. *P.G.*, 2021 WL 4059409, at *5 (citing *Paykina ex rel. E.L. v. Lewin*, 387 F. Supp. 3d 225, 245 (N.D.N.Y. 2019)). In addition, the balance of hardships clearly favors plaintiff. He will personally benefit from continuing to receive medically necessary treatment. The hardship to defendants is comparatively minimal, especially in light of plaintiff's

uncontested assertion that the Jail has already worked with Credo to provide treatment to pregnant women.

Therefore, it is

ORDERED that

1. Plaintiff's motion for a preliminary injunction is GRANTED;

2. Defendants are PRELIMINARILY ENJOINED to:

    a. Provide Plaintiff with his daily prescribed methadone treatment during his period of incarceration in defendants' custody in a way deemed appropriate in light of security needs, such as by:

        i. transporting plaintiff for a prescribed methadone treatment to Credo on Mondays through Saturdays; and

        ii. transporting plaintiff to Crouse Hospital on any day that Credo is not open;

    b. Continue to provide plaintiff with his daily prescribed methadone treatment unless or until his methadone treatment providers at Credo, Crouse Hospital, or any other treatment provider through which plaintiff receives methadone treatment under this Order determines that such treatment shall be terminated;

3. Sufficient reason having been shown therefor, the security requirement of Federal Rule of Civil Procedure 65(c) is waived.

IT IS SO ORDERED.

Signature of David N. Hurd

David N. Hurd
U.S. District Judge

Dated: March 29, 2022
       Utica, New York.