UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

M.C. and T.G., on behalf of themselves and all similarly situated individuals,

        Plaintiffs,

  v.

JEFFERSON COUNTY, NEW YORK; COLLEEN M. O'NEILL, as the Sheriff of Jefferson County, New York; BRIAN R. McDERMOTT, as the Undersheriff of Jefferson County; and MARK WILSON, as the Facility Administrator of Jefferson County Correctional Facility,

        Defendants.

Case No. 6:22-cv-190-DNH-ML

---

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFFS' CONSENT MOTION FOR LEAVE TO FILE UNDER SEAL</u>**

NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION

Antony P.F. Gemmell, #700911
Terry T. Ding, #702578
Molly K. Biklen, #515729
Gabriella M. Larios, #703415
Claire E. Molholm*
125 Broad Street, 19th Floor
New York, New York 10004
Telephone: 212-607-3320
agemmell@nyclu.org

* Admission to the New York bar pending; practicing under supervision.

Dated: April 6, 2022
       New York, New York

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

CONCLUSION ...................................................................................................................... 9

# INTRODUCTION

Plaintiffs in this civil rights class action are individuals living with a life-threatening and deeply stigmatized disability, opioid use disorder ("OUD"). They bring this civil rights class action to challenge Jefferson County's widespread practice of denying prescribed and essential medications for OUD to individuals detained at the Jefferson County Correctional Facility. In order to pursue this action free from the trenchant stigma associated with OUD, Plaintiffs seek leave to proceed by pseudonym in this action, and to pseudonymize the names of other current and former members of the putative class.[1]

If their identities are publicly disclosed in conjunction with this litigation, Plaintiffs and other class members face exposure to a wide array of harms, including loss of future employment prospects and social ostracization. Such harms threaten to derail their recovery from OUD, deterring Plaintiffs and other class members from maintaining treatment, and inducing severe anxiety that itself can be a trigger for life-threatening relapse. By contrast, Defendants, who consent to this motion, face no prejudice if the identities of Plaintiffs and other class members are shielded from public disclosure—particularly because Plaintiffs have disclosed to Defendants the names of the individuals whose identities they seek to pseudonymize.[2]

---

[1] Plaintiffs have moved to certify a class of all non-pregnant individuals who are or will be detained at the Jefferson County Correctional Facility and had or will have prescriptions for agonist medication for opioid use disorder at the time of entry into Defendants' custody. *See generally* Mot. for Class Certification, ECF No. 2. For the sake of simplicity, this motion refers to current and former members of the putative class as "class members."

[2] The pseudonymized individuals referenced in Plaintiffs' filings in this action to date are J▇▇ C▇▇ ("J.C."), J▇ M▇ ("J.M."), M▇▇ C▇ ("M.C."), M▇ S. C▇ ("M.S.C."), M▇ L▇ ("M.L."), P▇ G▇ ("P.G."), P▇ M▇ ("P.M."), R▇ D▇ ("R.D."), R▇ G▇ ("R.G."), S▇ C▇ (also known as S▇ P▇) ("S.C."), S▇ G▇ ("S.G."), and T▇ G▇ ("T.G.").

1

Protecting Plaintiffs and other class members from public disclosure of their identities in this action will only further the public's interest with little or no countervailing cost, ensuring that stigma does not serve as a barrier to the courthouse for people with disabilities. Accordingly, the Court should grant this motion.

## BACKGROUND

Members of the putative class are all individuals diagnosed with OUD, a chronic medical condition that permanently rewires the brain, causing cravings for and uncontrollable use of opioids. *See* Mem. of Law in Supp. of Mot. for Class Certification, 5–6, ECF No. 2-1; Mem. of Law in Supp. of TRO, 2, ECF No. 4-1. People with OUD face pervasive and pernicious stigma. *See* Mem. of Law in Supp. of TRO, 14–15; Decl. of Richard N. Rosenthal ("Rosenthal Decl."), Exs. 11, 30, ECF No. 2-18. This stigma is grounded in the deeply rooted misconception that opioid addiction is a choice and a moral failing, rather than a medical condition that induces chemical dependency. *See* Decl. of Edmond Hayes ¶ 28, ECF No. 7. As the director of the National Institute on Drug Abuse observes, stigma "is especially powerful in the context of substance disorders" like OUD.[3] Widespread antipathy towards people with OUD causes them substantial harm: It obstructs access to medically necessary treatment; causes them psychological distress, which in turn increases the likelihood of substance use; and deters them from seeking or maintaining treatment.[4]

---

[3] Nora D. Volkow, *Fighting Back against the Stigma of Addiction*, SCIENTIFIC AMERICAN (Sept. 1, 2020), https://www.scientificamerican.com/article/fighting-back-against-the-stigma-of-addiction.

[4] *See* Josiah D. Rich & Sarah E. Wakeman, *Barriers to Medications for Addiction Treatment: How Stigma Kills*, 53 Substance Use & Misuse 330, 330 (2018), https://doi.org/10.1080/10826084.2017.1363238 (describing stigma towards OUD as "a major driver behind the lack of access to opioid agonist therapy"); Alexander C. Tsai et al., *Stigma as a Fundamental Hindrance to the United States Opioid Overdose Crisis Response*, PLoS Med. (2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6957118/.

Class members wish no longer to be defined by addiction. After starting medication-based treatment, they are hoping to better their lives and return to normalcy. *See* M.C. Decl. ¶¶ 14–15, ECF No. 2-4; T.G. Decl. ¶¶ 7, 20, ECF No. 2-5; M.S.C. Decl. ¶¶ 7–9, ECF No. 8; R.G. Decl. ¶¶ 6, 15, ECF No. 9; S.G. Decl. ¶¶ 6, 9, 21, ECF No. 10; J.C. Decl. ¶¶ 6, 13, ECF No. 33; J.M. Decl. ¶¶ 6, 17, ECF No. 34; M.L. Decl. ¶¶ 7, 17, ECF No. 35; P.M. Decl. ¶¶ 6–7, ECF No. 36; R.D. Decl. ¶ 10, ECF No. 37; S.C. Decl. ¶ 28, ECF No. 38. They seek to maintain their privacy so they can avoid unnecessary stigma and threatening stressors as they prioritize their health and families. *See* J.C. Decl. ¶ 14; J.M. Decl. ¶ 18; M.L. Decl. ¶ 18; P.M. Decl. ¶ 15; R.D. Decl. ¶ 15; S.C. Decl. ¶ 29.

## **ARGUMENT**

Proceeding by pseudonym is the most effective and least burdensome means to protect the weighty interests of class members. Plaintiffs and class members may seal their names and litigate under pseudonyms when their "interest in anonymity" outweighs "the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008); *see* Local Rule 5.3(a) (providing for the sealing of a party); Local Rule 5.3(c) (providing that "[o]nce the Court seals . . . a party . . . , the material shall remain under seal for the duration of the sealing order or until [further] order"). This balancing of interests encompasses the following factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

3

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (cleaned up). Whether to permit a plaintiff or class member to proceed under pseudonym rests within the sound discretion of the district court. *Id.*

Here, the privacy interests of Plaintiffs and the class strongly outweigh any countervailing interests of Defendants and the public.

With regard to the *first* factor, Plaintiffs' claims here center on class members' rights to access medical treatment for their OUD. In substantially identical circumstances to those here, this Court has recognized the need to seal records to "keep[] private [an individual with OUD's] highly sensitive medical information." Order Granting Plaintiff's Mot. to Seal, *P.G. v. Jefferson Cnty.*, No. 5:21-cv-00388 (N.D.N.Y. May 24, 2021), ECF No. 31; *see Doe #1 v. Syracuse Univ.*, No. 5:18-CV-0496, 2018 WL 7079489, at *6 (N.D.N.Y. Sept. 10, 2018) (determining that "serious stigma" associated with issues in case weighed in favor of pseudonymity), *report and recommendation adopted*, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020). And courts routinely recognize that the potential disclosure of sensitive and personal medical information can justify sealing. *See, e.g., Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 66 (2d Cir.

4

2011) ("Medical information in general, and information about a person's . . . substance-abuse history in particular, is information of the most intimate kind." (cleaned up)); *Smith v. U.S. Off. of Pers. Mgmt.*, No. 2:13-CV-5235, 2014 WL 12768838, at *2 (E.D. Pa. Jan. 21, 2014) (permitting plaintiff challenging denial of benefits for addiction treatment program to proceed under pseudonym in part "because of the societal stigma associated with addiction"); *see also Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (granting motion to proceed under pseudonym based on the plaintiff's substance use disorder and HIV-positive status). The first factor in the balancing analysis thus militates in favor of allowing Plaintiffs and other class members to proceed under pseudonyms in this action.

The *second* factor also weighs in favor of proceeding by pseudonym here. Disclosure of their identities risks seriously harming Plaintiffs and class members in light of rampant stigma against individuals with OUD. Most critically, there is a substantial risk that the stress from having their opioid addiction revealed to the world would cause class members to relapse, jeopardizing their hard-earned recovery and even their lives. *See Doe v. Smith*, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) (permitting plaintiff to use pseudonym based on evidence that the stressor of "proceeding publicly would seriously threaten her mental health"). As addiction expert Dr. Richard Rosenthal explains, OUD "changes the circuitry in the brain for regulating … stress," such that stressors often cause patients to relapse. Rosenthal Decl. ¶ 15.

Moreover, it is well documented that the stigma surrounding OUD deters patients from seeking or maintaining treatment. *See supra* at 2 n.4. Recognizing this harm, Congress and public health authorities have made it a priority to protect the privacy of people with OUD in connection with their treatment. Most notably, 42 U.S.C. § 290dd-2 and its implementing regulations at 42 C.F.R. Part 2 mandate that patient-identifying information disclosed by a

federally assisted substance use disorder treatment program be treated with strict confidentiality. *See* 42 U.S.C. § 290dd-2; 42 C.F.R. § 2.13(a). "Without that assurance [of confidentiality]," Congress explained, "fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have." H.R. Conf. Rep. No. 92-775, at 28 (1972), reprinted in 1972 U.S.C.C.A.N. 2045, 2072; *see also Jeanette A v. Condon*, 728 F. Supp. 204, 206 (S.D.N.Y. 1989) ("When Congress passed [42 U.S.C. § 290dd] . . . , its intent was to assure . . . every patient and former patient that his right to privacy will be protected." (alterations and internal quotation marks omitted)); *Doe v. Main Line Hosps., Inc.*, No. CV 20-2637, 2020 WL 5210994, at *3 (E.D. Pa. Sept. 1, 2020) (reasoning the fact that "society . . . stigmatizes drug addiction," which could "negatively impact [the plaintiff's] continued sobriety and treatment," militates in favor of allowing use of pseudonym).

Additionally, because of the highly sensitive nature of the information in this case, and the harms its disclosure would inflict, Plaintiffs and other class members have maintained their anonymity from the outset of the lawsuit in accordance with the *seventh* factor. *See generally* Compl., ECF No. 1 (filed under pseudonym). Thus, this weighs in favor of allowing them all to continue using a pseudonym in this litigation. *See Sealed Plaintiff*, 537 F.3d at 190 (anonymity favored where "the plaintiff's identity has thus far been kept confidential"); *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (granting pseudonymity where plaintiff had "only revealed his [medical] condition to a few close friends, family and his medical providers").

With regard to the *fifth* factor, when "a plaintiff attacks . . . a governmental policy," as Plaintiffs do here, their "interest in proceeding anonymously is considered particularly strong." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003); *see Doe #1*, 2018 WL 7079489, at

6

\*7 (same). This is because in such challenges "the plaintiff presumably represents a minority interest (and may be subject to stigmatization)," *EW*, 213 F.R.D. at 111—a presumption that is certainly true here, given the pervasive stigma towards people with OUD, *see supra* at 2 n.3.

While Plaintiffs' and class members' privacy interests are significant, the countervailing interests in publicly revealing Plaintiffs' or other class members' identities are minimal. In relation to the *sixth* factor, Plaintiffs and identified class members have disclosed their identities to Defendants for the purposes of this litigation, *see* Decl. of Terry Ding ¶ 3, ECF. No. 40-3, so Defendants are not prejudiced by Plaintiffs' and class members' retaining anonymity as to the public, *see EW*, 213 F.R.D. at 112 (identifying no prejudice to defendant's ability to litigate where "it already knew plaintiff's name"); *Doe #1*, 2018 WL 7079489, at \*7 (concluding that "defendants would not be prejudiced by an anonymous proceeding because defendants know specifically who filed this lawsuit"). Defendants are unhindered in their ability to investigate the facts of and otherwise litigate this case as they would against any other party. Further neutralizing any prejudice to the individual Defendants is the fact that this suit concerns their actions in their official capacities, and "[s]uits against the government involve no injury to the Government's reputation." *Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019) (internal quotation marks omitted).

Nor would the public's interest be furthered by requiring Plaintiffs or other class members to disclose their identities under the *eighth* factor. That interest is weak because this case concerns the Jefferson County Correctional Facility's practice of denying treatment to class members, not "particular actions and incidents" involving specific individuals. *See Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) (holding that the public has a minimal interest in plaintiffs' identities in cases that concern "abstract challenges to public policies"). Thus,

Plaintiffs' and class members' individual identities are "largely irrelevant to the public concern with the nature of the process" of how the jail treats individuals receiving treatment for OUD. *See id.* at 158.

The public, too, has a substantial interest in concealing Plaintiffs' and class members' identities here. Because class members risk stigma and retaliation in disclosing their names, proceeding by pseudonym actually furthers the public interest in ensuring that individuals with OUD will not be deterred from participating in litigation to vindicate their rights. *See id.* (recognizing that the public has an interest in ensuring that "the price of access to the courts not be too high" by risking "public scorn or even retaliation"); *Grottano v. The City of New York*, 15-CV-9242, 2016 WL 2604803, at *2 (S.D.N.Y. Mar. 30, 2016) (noting the public has a "strong interest" in protecting the identities of victims to ensure other victims will not be deterred from reporting unlawful conduct); J.C. Decl. ¶ 14; J.M. Decl. ¶ 18; M.L. Decl. ¶ 18; P.M. Decl. ¶ 15; R.D. Decl. ¶ 15; S.C. Decl. ¶ 29. This is especially true given that Plaintiffs' and class members' allegations are of a "more graphic or intrusive nature," involving their disturbing and intimate details of withdrawal. *See Doe v. Gong Xi Fa Cai, Inc.*, 19-CV-2678, 2019 WL 3034793, at * 2 (S.D.N.Y. July 10, 2019); *see also* T.G. Decl. ¶¶ 10, 16, 19; M.S.C. Decl. ¶¶ 10, 14–15, 18; R.G. Decl. ¶¶ 10, 14; S.G. Decl. ¶¶ 13, 19; J.C. Decl. ¶¶ 11–12; J.M. Decl. ¶¶ 10, 16; M.L. Decl. ¶¶ 10, 16; P.M. Decl. ¶¶ 11, 13; R.D. Decl. ¶ 13; S.C. Decl. ¶¶ 16, 18, 22–23.

Finally, with regard to the *tenth* factor, the alternative mechanism for protecting Plaintiffs' and the class members' confidentiality—sealing a broader set of information—is less effective and more burdensome on the parties and the Court.[5] If neither Plaintiffs nor members

---

[5] If the Court declines to allow Plaintiffs or members of the putative class to seal their names, it should alternatively permit them to file under seal certain documents containing highly sensitive medical information that derives directly from their opioid treatment program ("OTP"),

8

of the class are permitted to seal their names, federal law would require that "[r]ecords of [their] identit[ies], diagnos[es], prognos[es], or treatment . . . maintained in connection with [their treatment at their federally assisted opioid treatment providers] be confidential." 42 U.S.C. § 290dd-2; *see also* 42 C.F.R. § 2.13. Complying with that mandate would entail redacting and sealing broad swathes of the filings in this case—far more than merely Plaintiffs' or class members' names. At the same time, these copious redactions would still be less protective of their privacy than pseudonymity because it would be obvious from filings other than their medical records that they have OUD and are receiving methadone treatment for it. They would therefore still be exposed to stigma and harm. *See Doe* #1, 2018 WL 7079489, at *9 (reasoning that federal law requiring confidentiality of academic records was insufficient to protect plaintiffs' identities because "the confidentiality of [plaintiffs'] records and documents is a separate issue from whether they should be required to reveal their identities").

## CONCLUSION

For the foregoing reasons, the Court should seal the names of Plaintiffs and current and former members of the putative class and order that their names appear by pseudonym in public filings in this matter.

Dated:  April 6, 2022
New York, New York

                                                   Respectfully submitted,

                                                   NEW YORK CIVIL LIBERTIES UNION
                                                     FOUNDATION
                                                 */s/ Antony P. F. Gemmell*
                                                 Antony P. F. Gemmell, #700911
                                                 Terry T. Ding, #702578
                                                 Molly K. Biklen, #515729

---

as federal law and regulations require that these records remain confidential. *See* 42 U.S.C. § 290dd-2; 42 C.F.R. Part 2 (mandating that patient-identifying information disclosed by a federally assisted substance use disorder treatment program be treated with strict confidentiality).

9

Gabriella M. Larios, #703415  
Claire E. Molholm*  
125 Broad Street, 19th Floor  
New York, New York 10004  
Telephone: 212-607-3320  
Facsimile: 212-607-3318  
agemmell@nyclu.org

*Counsel for Plaintiffs*

\* Admission to the New York bar pending; practicing under supervision.