UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
M.C. and T.G., on behalf of themselves and
all similarly situated individuals,

                Plaintiffs,


    -v-                                    6:22-CV-190

JEFFERSON COUNTY, NEW YORK;
COLLEEN M. O'NEILL, as the Sheriff of
Jefferson County, New York; BRIAN R.
McDERMOTT, as the Undersheriff of
Jefferson County; and MARK WILSON, as
the Facility Administrator of Jefferson County
Correctional Facility,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NEW YORK CIVIL LIBERTIES<br>   UNION FOUNDATION<br>*Attorneys for Plaintiffs*<br>125 Broad Street, 19th Fl.<br>New York, New York 10004 | ANTONY P.F. GEMMELL, ESQ.<br>TERRY T. DING, ESQ.<br>MOLLY K. BIKLEN, ESQ. |
| BARCLAY DAMON LLP<br>*Attorneys for Defendants*<br>125 East Jefferson Street<br>Syracuse, New York 13202 | TERESA M. BENNETT. ESQ. |

DAVID N. HURD
United States District Judge

# MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On March 1, 2022, plaintiffs M.C.[1] and T.G.[2] (together "plaintiffs") filed this civil rights action against Jefferson County (the "County") and Sheriff Colleen M. O'Neill, Undersheriff Brian R. McDermott, and Jail Administrator Mark Wilson (collectively "defendants").[3] The individual defendants are sued in their official capacities. Plaintiffs' five-count complaint contends that defendants maintain a policy of banning opiate use disorder ("OUD") medication ("MOUD") for non-pregnant individuals in their custody, and that this ban violates a putative class's rights under the Americans with Disabilities Act ("ADA"), the Eighth and Fourteenth Amendments, and related state law.

On March 2, 2022, M.C. moved under Federal Rule of Civil Procedure ("Rule") 65 to enjoin Jefferson Correctional Facility ("Jefferson Correctional") "from enforcing its blanket methadone ban against him until the Court has assessed the ban's lawfulness." On March 29, 2022, the Court granted M.C.'s

---

[1] M.C. is a 29-year-old Croghan resident suffering from OUD who was committed to Jefferson Correctional in early March 2022. Prior to his incarceration, plaintiff received daily methadone treatment prescribed by his physician. Although it is a controlled substance, methadone is approved by the U.S. Food and Drug Administration to treat OUD, a medical condition "characterized by compulsive use" of opioid painkillers.

[2] T.G. is a 31-year-old Watertown resident who has been in pretrial detention at Jefferson Correctional since January 20, 2022. She is diagnosed with OUD, for which she had been receiving daily treatment until her current detention. Upon taking her into custody, defendants ended T.G.'s treatment and have refused to allow her access to that treatment at any point during her detention.

[3] On April 13, 2021, the Court granted plaintiffs' request to seal the names of all current and former members of the putative class. Dkt. No. 44

motion for a preliminary injunction, requiring defendants to provide plaintiff with his daily prescribed methadone treatment.

On March 1, 2022, the day plaintiffs filed this action, they also moved to certify a putative class of all non-pregnant individuals who are or will be detained at Jefferson Correctional and had or will have prescriptions for MOUD at the time of entry into defendants' custody. On April 6, 2022, plaintiffs moved under Federal Rule of Civil Procedure ("Rule") 65 "for a preliminary injunction permitting members of the putative class to access their prescribed treatment for OUD until this Court can evaluate the lawfulness of the jail's practice." Both the class certification motion and the preliminary injunction motion on behalf of the putative class have been fully briefed.[4] The Court held oral argument on May 10, 2022 and reserved decision.

## II.  CLASS CERTIFICATION

### 1.  Legal Standard

Federal Rule of Civil Procedure ("Rule") 23(a) contains four explicit prerequisites to class certification: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Glatt v. Fox Searchlight*

---

[4] Plaintiffs have submitted a substantial amount of evidence in support of their requests for relief, including declarations from (1) plaintiffs M.C. and T.G.; (2) the medical director of Credo Community Center ("Credo"); and (3) a retained expert on addiction medicine. Aside from disputing the existence of this so-called "ban" on methadone treatment at the Jail, the County's opposition does not appear to directly dispute any of this evidentiary material.

*Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). Rule 23 also requires a party to satisfy at least one of three additional elements. Relevant here, Rule 23(b)(2) requires that the defendants have "acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

### 2. Discussion

Plaintiffs seek to certify a class defined as "all non-pregnant individuals who are or will be detained at Jefferson County Correctional Facility and had or will have prescriptions for agonist MOUD at the time of entry into Defendants' custody." They also seek to certify two subclasses: one of class members subject to pretrial detention and one of class members subject to postconviction detention.

*A. Rule 23(a)*

**i.  Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity inquiry is not simply mathematical; it turns "not on mere numbers" but on "all the circumstances surrounding a case." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley &*

*Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).[5]

Plaintiffs have carried their burden on this element. Their submissions identify approximately twelve individuals who have been subjected to Jefferson Correctional's MOUD ban in the month of February alone, and, because the class is "open," many additional class members will flow in as they continue to be detained by defendants. Moreover, as plaintiffs note, defendants' own data reflects that hundreds of people with OUD cycle through Jefferson Correctional annually, and the Court can reasonably assume that a substantial portion of these people are among the 42% of New Yorkers receiving treatment for OUD.

Lastly, several contextual factors weigh in favor of numerosity: (i) the putative class and subclasses consist entirely of current or future incarcerated individuals, making joinder difficult; (ii) even though the class members will share the same geographic area, the ability of any individual member to maintain their own lawsuit will be limited because they are in the criminal justice process; and (iii) litigating this case as a class action

---

[5] "The relevant considerations include judicial economy, the geographic dispersion of class members, the financial resources of class members, and the ability of claimants to institute individual suits." *Raymond v. New York State Dep't of Corr. & Cmty. Supervision*, 2022 WL 97327, at *3 (N.D.N.Y. Jan. 11, 2022).

promotes judicial economy. *See V.W. by and through Williams v. Conway*, 236 F. Supp. 3d 554, 572-73 (N.D.N.Y. 2017).

### ii.   Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." In other words, the Rule requires that "there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

Plaintiffs have carried their burden on this element. Plaintiffs challenge a single policy barring MOUD that applies to all class members. In addition, plaintiffs' single challenge raises numerous questions,[6] any of which would suffice to satisfy Rule 23(a)(2)'s commonality requirement. *See Raymond*, 2022 WL 97327, at *4 ("Even a single common question will do").

### iii.  Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims or defenses of the class." The typicality requirement

---

[6] Plaintiff's challenge raises the following questions: (1) Whether Defendants maintain any policy or practice of denying prescribed agonist MOUD to individuals detained at the Jefferson County Correctional Facility; (2) Whether OUD is an objectively serious medical condition; (3) Whether involuntary cessation of prescribed agonist MOUD exposes class members to a substantial risk of serious harm; (4) Whether Defendants are deliberately indifferent to the substantial risk of serious harm to which involuntarily ceasing prescribed agonist MOUD exposes class members; (5) Whether Defendants deny class members meaningful access to the jail's medical services on account of class members' OUD by maintaining a policy or practice of denying prescribed agonist MOUD; and (6) Whether Defendants' policy or practice of denying prescribed agonist MOUD discriminates on the basis of disability.

is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability." *V.W.*, 236 F. Supp. 3d at 572–73.

Plaintiffs argue that their claims satisfy the typicality requirement for substantially the same reasons that they satisfy the commonality requirement, namely that the putative class shares claims based on the common application of Jefferson Correctional's challenged policy of denying MOUD. For the same reasons as set forth above, plaintiffs have satisfied the typicality element. *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012 ("The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites").

### iv.   **Fair and Adequate Protection of Class Interests**

Rule 23(a)(4) requires that the plaintiffs "will fairly and adequately protect the interests of the class." Adequacy requires: (1) that the proposed class representative have an interest in vigorously pursuing the class's claims and have no interests antagonistic to the interests of other class members, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); and (2) class counsel must be qualified, experienced, and able to conduct the litigation, *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Plaintiffs have carried their burden on this final Rule 23(a) requirement. Indeed, plaintiffs have no foreseeable conflict with other class members and their interests align closely with the putative class because they will be subjected to the same common course of treatment, by the same officials, on the basis of the same practices. *See V.W.*, 236 F. Supp. 3d at 577. Additionally, class counsel is adequately qualified and experienced for Rule 23 purposes, having "extensive litigation experience in the class action context and in effectively seeking classwide injunctive relief in federal forums." *See V.W.*, 236 F. Supp. 3d at 577.

*B. Rule 23(b)*

Rule 23(b)(2) provides that a class action may be maintained if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) comes into play when litigants seek "institutional reform in the form of injunctive relief." *Raymond*, 2022 WL 97327, at *9. The Supreme Court has identified civil rights cases as "prime examples" of Rule 23(b)(2) class actions. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

This is a prime example of a Rule 23(b)(2) class action because plaintiffs are challenging a systemic policy or practice by which all class members face

denial of prescribed MOUD in violation of their constitutional and statutory rights. *See Raymond*, 2022 WL 97327, at *9. Members of the class "would benefit from the same remedy—an order enjoining defendants from application of the policies and practices resulting in the deprivations at issue." *V.W.*, 236 F. Supp. 3d at 577. Because "a single injunction or declaratory judgment would provide relief to each member of the class," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011), the putative class qualifies for certification under Rule 23(b)(2).

## III. **PRELIMINARY INJUNCTION**

### 1. **Legal Standard**

A party seeking a preliminary injunction must show: (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest. *Page v. Cuomo*, 478 F. Supp. 3d 355, 362–63 (N.D.N.Y. 2020). Notably, a heightened standard applies where the requested injunction (1) is "mandatory"; *i.e.*, would alter the status quo; or (2) "will provide the movant with substantially all of the relief sought and that relief cannot be undone." *Id.* When either condition is met, the movant must show

a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm. *Id.*

## 2. Discussion

Plaintiffs argue that they are "substantially likely" to succeed on the merits of their claims under Title II of the ADA and the Eighth and Fourteenth Amendments. The Court agrees.

To state a claim under Title II of the ADA, a plaintiff must establish: "(1) he is a qualified individual with a disability; (2) the defendant is subject to [the ADA]; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by defendants because of his disability." *Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189, 196–97 (2d Cir. 2014).

Plaintiffs have established a substantial likelihood of success on the merits of this claim. Plaintiffs have been diagnosed with OUD and will be eligible for medical treatment while incarcerated at Jefferson Correctional, an entity subject to Title II. The refusal to provide access to methadone deprives plaintiffs "meaningful access" to Jefferson Correctional's healthcare services. *Smith v. Aroostook County*, 376 F. Supp. 3d 146, 160 (D. Me. 2019), *aff'd* 922 F.3d 41 (1st Cir. 2019).

Plaintiffs are also substantially likely to succeed on the merits of their constitutional claims. To state a claim for deliberate indifference to serious

medical needs, a plaintiff must establish: (1) the alleged deprivation is objectively "sufficiently serious"; and (2) the defendant acted with deliberate indifference to that serious medical need. *Charles v. Orange County*, 925 F.3d 73, 86–87 (2d Cir. 2019).[7]

Plaintiffs' evidence establishes that OUD is a chronic brain disease and that opioid withdrawal has been recognized as an "objectively" serious medical condition by other courts in this Circuit. Plaintiffs have further established that defendants are on ample notice that forcibly withdrawing them from medically necessary treatment for OUD; *i.e.*, MOUD, will expose them to the serious harms of withdrawal and the danger of relapse.

Plaintiffs have also satisfied the remaining elements for relief. First, the evidence strongly establishes that cutting off treatment will cause "irreparable harm." Second, when a governmental defendant opposes relief, "balancing of the equities merges into [the court's] consideration of the public interest." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021). As relevant here, the public interest supports granting relief where the

---

[7] As noted, the class is comprised of two subclasses – one each for class members subject to pretrial and postconviction custody, respectively. These subclasses account for the different constitutional standards that apply to a claim of inadequate jail medical care before and after conviction: for pretrial subclass members, an objective deliberate indifference standard under the Fourteenth Amendment; and for postconviction subclass members, a subjective deliberate indifference standard under the Eighth Amendment. *Compare Charles*, 925 F.3d at 87 (requiring that the defendants knew or should have known of a substantial risk of harm), *with Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (requiring actual awareness of that risk). Because plaintiffs allege defendants have actual knowledge of the risk of harm that their practice poses to class members, the distinction between these two standards is largely immaterial here, and plaintiff's papers analyze the constitutional claims of both subclasses together under the higher, Eighth Amendment standard.

plaintiffs have established a clear likelihood of success and made a strong showing of irreparable harm. *Paykina v. Lewin*, 387 F. Supp. 3d 225, 245 (N.D.N.Y. 2019).

Notably, New York lawmakers have also recently passed legislation, effective October 7, 2022, which will require New York state prisons to provide "medication assisted treatment" to incarcerated individuals who are undergoing treatment for a substance use disorder. *See* N.Y. Correct. Law § 626 (attached hereto as "Exhibit A"). Specifically, the law provides that "[a]fter a medical screening, incarcerated individuals who are determined to suffer from a substance use disorder, for which FDA approved addiction medications exist shall be offered placement in the medication assisted treatment program." *Id.* These developments only serve to reinforce that a preliminary injunction on behalf of the class is appropriate.

## IV. **CONCLUSION**

For the reasons stated above, plaintiffs' motion for class certification is GRANTED. Plaintiffs' claims are certified as a class action on behalf of a class defined as: all non-pregnant individuals who are or will be detained at the Jefferson County Correctional Facility and had or will have prescriptions for agonist medication for opioid use disorder at the time of entry into defendants' custody, as well as two subclasses, one each for class members subject to pretrial and postconviction custody, respectively. Named plaintiffs

M.C. and T.G. are appointed as class representatives and the New York Civil Liberties Union Foundation is appointed as class counsel.

In addition, plaintiffs' motion for a preliminary injunction on behalf of the class is GRANTED. Pending a final decision on the merits of this action, it is ORDERED that defendants are immediately PRELIMINARILY ENJOINED to provide plaintiffs and the now-certified class with agonist medication for opioid use disorder during their detention in defendants' custody in accordance with the requirements set forth in New York Correction Law § 626. *See* Ex. A. The bond requirement is waived.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated: May 16, 2022
        Utica, New York.

# EXHIBIT A

# Legislation

**Search OpenLegislation Statutes**

> **The Laws of New York (/legislation/laws/all)** >
> **Consolidated Laws of New York (/legislation/laws/CONSOLIDATED)** >
> **CHAPTER 43** Correction **(/legislation/laws/COR/-CH43)** >
> **ARTICLE 22** Miscellaneous Provisions **(/legislation/laws/COR/A22)**

|  | UP |
| --- | --- |
| PREVIOUS | **ARTICLE 22** |
| **SECTION 625** | **Miscellaneous Provisions** |
| **Feminine hygiene products** | **(/legislation/laws/COR/A22)** |
| **(/legislation/laws/COR/625)** | |

THIS ENTRY WAS PUBLISHED ON 2022-03-25

SEE MOST RECENT VERSION BEFORE OR ON:   2022-03-25

SHARE

  

# SECTION 626

## Medication assisted treatment in correctional facilities

Correction (COR) CHAPTER 43, ARTICLE 22

* § 626. Medication assisted treatment in correctional facilities. 1. For purposes of this section "medication assisted treatment" means treatment of chemical dependence or abuse and concomitant conditions with medications requiring a prescription or order from an authorized prescribing professional.

2. (a) The commissioner, in conjunction with the office of addiction services and supports, shall establish a program to be administered at correctional facilities within the department in the state, for the purpose of employing medication assisted treatment for incarcerated individuals in such facilities who are undergoing treatment for a substance use disorder. Such program shall include all forms of medication assisted treatments approved for the treatment of a substance use disorder by the Federal Food and Drug Administration for the duration of an incarcerated individual's incarceration and shall provide an individualized treatment plan for each participant. After a medical screening, incarcerated individuals who are determined to suffer from a substance use disorder, for which FDA approved addiction medications exist shall be offered placement in the medication assisted treatment program. Placement in such program shall not be mandatory. Each participating incarcerated individual shall work with an authorized specialist to determine an individualized treatment plan, including an appropriate level of counseling. Decisions regarding type, dosage, or duration of any medication regimen shall be made by a qualified health care professional licensed or certified under title eight of the education law who is authorized to administer such medication in conjunction with the incarcerated individual.

(b) i. Such program shall also include conditions for a reentry strategy for incarcerated individuals who have participated in medication assisted treatment. Such strategy shall include, but not be limited to, providing each participating incarcerated individual with information on available treatment facilities in their area, information on available housing and employment resources, and any other information that will assist the incarcerated individual in continued recovery once released. Such program shall also assist the incarcerated individual in Medicaid enrollment, prior to release.

ii. Such program shall provide participating incarcerated individuals

preparing for release from prison with a one-week supply of any necessary medication, where permissible under federal laws and regulations to continue their medication assisted treatment in an effort to prevent relapse.

(c) Reentry planning and community supervision should include a collaborative relationship between clinical and parole staff including sharing of accurate information regarding the incarcerated individual's participation in medication assisted treatment to ensure that their medication is not deemed illicit or illegal. Additionally, procedures shall be developed to assist any reentrant who communicates a relapse with their parole officer or who fails a drug test, to receive substance use disorder support in lieu of arrest and/or incarceration.

3. The commissioner shall submit within one year of the effective date of this section and annually thereafter, a report to the governor, the temporary president of the senate and the speaker of the assembly on the effectiveness of the program established pursuant to this section. Such reports shall include an analysis of the impact of such program on the participating incarcerated individuals, including factors such as institutional adjustment, behavior infractions, reentry rates, HIV and hepatitis C treatment, and program participation, among related relevant factors. The reports shall also include the impact on institutional safety and performance and any recommendations for additional legislative enactments that may be needed or required to improve or enhance the program as determined to be appropriate by the commissioner.

4. Participation in the medication assisted treatment program shall not be withheld from a qualified incarcerated individual. An incarcerated individual may enter into such program at any time during his or her incarceration. An incarcerated individual using medication assisted treatment prior to such incarcerated individual's incarceration shall be eligible to, upon request by such incarcerated individual,

continue such treatment in the medication assisted treatment program for any period of time during the duration of such incarcerated individual's incarceration. No person shall be denied participation in the program on the basis of a positive drug screening upon entering custody or upon intake into the program; nor shall any person receive a disciplinary infraction for such positive drug screening. No person shall be removed from, or denied participation in the program on the basis of having received any disciplinary infraction: (a) before entry into the program; or (b) during participation in the program.

\* NB Effective October 7, 2022