# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| M.C. et al., on behalf of themselves and all similarly situated individuals, | |
| Plaintiffs, | Case No. 6:22-cv-190 (DNH/ML) |
| v. | |
| JEFFERSON COUNTY, NEW YORK, et al., | |
| Defendants. | |

## <u>PROPOSED CONSENT DECREE</u>

WHEREAS, on March 1, 2022, Plaintiffs M.C. and T.G. filed a class-action complaint alleging that Defendants Jefferson County, New York; Colleen M. O'Neill,[1] as the Sheriff of Jefferson County, New York; Brian R. McDermott, as the Undersheriff of Jefferson County; and Mark Wilson, as the Facility Administrator of Jefferson County Correctional Facility (collectively, "Defendants," and, together with Plaintiffs, the "Parties") maintained a practice of routinely denying prescribed, life-sustaining medical treatment to Plaintiffs and other individuals with opioid use disorder ("OUD") at the Jefferson County Correctional Facility (the "Jail") in violation of the Americans with Disabilities Act, the Eighth and Fourteenth Amendments to the United States Constitution the New York State Civil Rights Law, and the New York State Human Rights Law;

WHEREAS, on May 16, 2022, the Court certified a class (the "Class") defined as "all non-pregnant individuals who are or will be detained at the Jefferson County Correctional Facility and had or will have prescriptions for agonist medication for opioid use disorder at the time of entry into defendants' custody," as well as two subclasses, one each for class members subject to pretrial and postconviction custody, respectively; appointed Plaintiffs as class representatives; and appointed the New York Civil Liberties Union Foundation as class counsel ("Class Counsel");

WHEREAS, on May 16, 2022, the Court preliminarily enjoined Defendants to provide Plaintiffs and the certified class with agonist medication for OUD ("MOUD") during their detention in Defendants' custody in accordance with the requirements set forth in New York Correction Law section 626; and

---

[1] Peter R. Barnett is now the Sheriff of Jefferson County and, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, is automatically substituted for Colleen M. O'Neill in this litigation.

WHEREAS, the Parties will jointly petition the Court for approval of this agreement (the "Agreement");

NOW, THEREFORE, the Parties stipulate and agree, and IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows.

**A. Jurisdiction and Venue.**

1.  The Court has subject-matter jurisdiction over the Action under 28 U.S.C. § 1331, 1343, and 1367; 42 U.S.C. § 1983; and Title of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* Venue is proper in the United States District Court for the Northern District of New York under 28 U.S.C. § 1391.

**B. Availability of MOUD Treatment.**

1.  Defendants shall make MOUD treatment available to individuals detained at the Jail consistent with N.Y. Correction Law §§ 45(19) and 626.

2.  Defendants shall ensure, both at intake and thereafter, that MOUD treatment—including, without limitation, evaluation and referral therefor—is available in a timely manner to individuals in the Jail's custody.

3.  As part of the intake process, and no later than four hours following an individual's entry to the Jail's custody, Defendants' medical staff shall:

    a.  Verify, via MD Toolbox or another electronic database with comparable functionality to verify MOUD prescription status, whether such individual currently has an active prescription for any MOUD.

    b.  Notate in Initial Risk Assessment form completed by Jail staff upon intake, and in provider notes by Primecare staff, with respect to any individual who enters Defendants' custody while prescribed MOUD, the type, form, and dosage of MOUD prescribed.

    c.  Screen such individual for OUD by reviewing their intake and receiving screening forms; medical records, including reported MOUD prescriptions, pharmacy records, treatment facility records, and outpatient provider records; documented or reported opioid use; and physical symptoms.

    d.  Refer for an assessment consistent with section B.6. of this Agreement any individual identified via a screening described in section B.3.c. of this Agreement as a potential candidate for MOUD treatment.

4.  Any individual who enters Defendants' custody while prescribed MOUD shall be permitted to receive treatment with the same type and specific formulation of

MOUD unless medically contraindicated. Such treatment shall be provided within 24 hours of the individual's entry to the Jail's custody.

5. Defendants shall permit individuals in the Jail's custody to request MOUD treatment at any time during such custody via sick-call request or other request to the Jail's medical staff.

6. With the exception of individuals provided with MOUD treatment pursuant to section B.4. of this Agreement, any individual in the Jail's custody who, at any time during such custody, requests MOUD treatment or is referred to be assessed for such treatment, shall be assessed for MOUD treatment by a medical provider consistent with the following requirements.

   a. The assessment shall be informed by the American Society of Addiction Medicine's National Practice Guideline for the Treatment of OUD, the DSM-5 criteria for OUD, the COWS, the TCU-5 drug screen 5, and prior treatment records and prescriptions; and shall include a review of vital signs. MOUD treatment shall not be denied unless such treatment is either medically contraindicated as determined by the medical provider performing the assessment applying generally accepted medical standards or declined by the individual assessed. Any denial of MOUD treatment or refusal by an individual shall be documented in writing.

   b. The assessment shall occur within 12 hours after such request or referral where reasonably possible. Where the assessment does not occur within 12 hours of a request or referral for MOUD treatment (for example, because of the need to perform additional medically indicated testing as part of the assessment which testing cannot be completed within 12 hours), the reason(s) for such delay shall be documented in the provider notes section of the individual's medical file. In no case shall any such delay alter or constitute an exception to the requirements of Section B.6.c. of this Agreement.

   c. The assessment shall result in a decision whether to approve MOUD treatment for the individual assessed. Once the patient is assessed as qualifying for treatment they will immediately be placed on the next provider line to initiate treatment. Such decision shall be documented in the provider notes section of the individual's medical file and shall be rendered with sufficient time to ensure that MOUD treatment, if approved, can begin within five days after the referral or request for MOUD treatment.

   d. Notwithstanding the requirements of Section B.6.c of this Agreement, if an individual requesting or referred for assessment for MOUD treatment under Section B.6. of this Agreement is absent from the Jail for reasons beyond Defendants' control (e.g., an emergency hospitalization or a

3

mandatory court date whose scheduling Defendants did not request or decide or a security lockdown at the Jail that prevents or delays medical access) and in a manner that prevents MOUD treatment from beginning within five days of such referral or request, MOUD treatment, if approved, shall instead begin as soon as practicable and in no event longer than five days after the individual's return to the Jail.

e.  With respect to any individuals requesting or otherwise requiring induction of methadone treatment, if the Credo Community Center is unable to assess any individuals and begin treatment within five days of the referral or request under Section B.6. of this Agreement, Defendants shall ensure that such individual is transported to a hospital (such as Samaritan Medical) to be assessed for and, if eligible, receive such treatment unless the hospital declines to provide said assessment and treatment. Any attempts to refer an individual to said hospital will be documented in the provider notes section of the individual's medical file.

f.  Any individual whose assessment or treatment for MOUD is subject to Section B.6. of this agreement who experiences withdrawal symptoms will be treated immediately upon diagnosis in accordance with Primecare's Medically Supervised Withdrawal and Treatment Policy (Policy No. PCM NY J-F-04). Consistent with Policy No. PCM NY J-F-04, "individuals experiencing life-threatening drug and/or alcohol intoxication (overdose) or withdrawal will be immediately transferred to a licensed acute care facility or hospital emergency room." Nothing in this subsection shall alter any of Defendants obligations under this Agreement.

7.  MOUD treatment of any individual detained at the Jail shall not be tapered or withdrawn, except with the consent of such individual, unless such tapering or withdrawal is medically necessary.

8.  If the MOUD treatment of any individual in the Jail's custody is tapered or withdrawn, or if a decision is otherwise made to deny or not to approve MOUD treatment to any individual in the Jail's custody, Defendants shall document in writing the specific reason(s) for such tapering or withdrawal, and within 24 hours after such tapering or withdrawal, the Defendants' Correction Shift Supervisor shall notify Class Counsel in writing by email to both Antony Gemmell at agemmell@nyclu.org and Molly Biklen at mbiklen@nyclu.org.

9.  In the event that Defendants cannot ensure that MOUD treatment is provided to an individual consistent within any requirement of this section (including any applicable timeframe under sections B.4. or B.6.c. of this Agreement) using the medical providers on which they primarily rely, Defendants shall use alternate medical providers to comply with such requirements, including, if necessary, by

transporting such individual to a hospital or other outside medical provider for MOUD treatment.

10. Individuals receiving MOUD treatment in the Jail's custody shall be administered their treatment in accordance with the following procedure.

    a. Medical staff will explain to patients the procedure for administering MOUD.

    b. Before administering MOUD, medical staff will perform a check of the mouth and hands of the patient and verify the patient's prescribed medication and dosage.

    c. Medical staff will then administer each form of MOUD in accordance with the following:

        i. Methadone. Medical staff will have the patient drink and swallow the methadone.

        ii. Suboxone. Medical staff will place the Suboxone strip(s) under the patient's tongue.

        iii. Sublocade. Individuals prescribed but not already taking Sublocade will be dosed on buprenorphine sublingually for a minimum of seven days before being administered Sublocade. Once eligible for the injection of Sublocade patients will receive monthly injections with a minimum of 26 days between doses.

        iv. Buprenorphine in pill form. Medical staff will pour the crushed buprenorphine pill(s) under the patient's tongue.

        v. Naltrexone/Vivitrol. Patients will receive Naltrexone by daily oral administration as part of the regular medication call as it is not a narcotic. Patients choosing to receive injectable, long-acting Vivitrol will receive oral Naltrexone for a trial period of 7 to 14 days and will then receive Vivitrol injections for a period not exceeding 30 days.

    d. Patients receiving methadone, Suboxone, or buprenorphine in pill form will wait for 15 minutes after administration without manipulating their mouths or hands. Medical staff will conduct a mouth and hand check every 5 minutes within the 15-minute timespan.

    e. No class member whose MOUD is administered sublingually shall be required to drink water or eat until such class member's MOUD dose has fully dissolved.

11. The Jail shall coordinate release planning for all individuals receiving MOUD treatment in the Jail's custody to ensure continuity of treatment after discharge from the Jail's custody consistent with the following requirements.

    a. The medical department shall obtain the appropriate Release of Information and Permission to Contact form and facilitate the release of records necessary for the individual's continuity of care to community-based MOUD providers.

    b. At a minimum, individuals receiving MOUD treatment in the Jail's custody shall be provided a 7-day bridge supply of their MOUD medication at the current dosing schedule upon their release from custody. In the alternative, at the individual's request, a 7-day supply of their MOUD medication at the current dosing schedule shall be ordered at the individual's pharmacy of choice.

    c. Information and emergency contact numbers for obtaining MOUD treatment shall be placed in the property of all individuals receiving MOUD treatment in the Jail's custody in the case of an unanticipated discharge. Where such an individual is unexpectedly discharged from the Jail's custody, medical staff shall make immediate and reasonable efforts to provide the individual with bridge medication per section B.11.b. of this Agreement and connected the individual with a community-based MOUD provider that can ensure continuity of care.

## C.  Policy and Training.

1. Defendants shall implement a comprehensive written policy governing access to MOUD treatment for individuals in the Jail's custody. Defendants shall ensure all medical and correctional workers at the Jail acknowledge the policy in writing within 30 days of either the Court's approval of this Agreement or the beginning of such workers' employment at the Jail, whichever comes later.

2. Within 30 days of the Court's approval of this Agreement, and on an annual basis thereafter, Defendants shall conduct a training, to be approved by Plaintiffs' counsel, and to be attended by all correctional and medical workers at the Jail.

## D.  Notice to Current and Future Class Members.

1. Within seven days of the Court's approval of this Agreement, Defendants shall disseminate the notice annexed hereto as Exhibit 1, as follows.

    a. Defendants shall post the notice prominently on the main page of Jefferson County's website pertaining to the Jail (currently https://co.jefferson.ny.us/departments/SheriffsOffice/correctional-

facility, but subject to change), as well as in the following locations and in such a manner that every such notice is readily viewable by individuals detained at the Jail:

    i.    The common area in each housing unit (e.g., pod bulletin board);

    ii.    Each area used to conduct facility intake;

    iii.    The common area of the medical unit; and

    iv.    Each medical examination room.

    b.  Defendants shall provide a copy of the notice to each individual at the Jail who has self-identified or been identified as having OUD; or who has requested, been evaluated for, or been denied treatment for OUD while detained at the Jail.

2. If any notice posted pursuant to section D.1.a. of this Agreement is removed, damaged, or defaced, Defendants shall replace the notice within five days.

3. Beginning within seven days after the Court's approval of this Agreement, and on an ongoing basis thereafter, Defendants shall, during the intake process, provide a copy of the notice annexed hereto as Exhibit 1, to each person entering the Jail's custody.

**E. Provision of Compliance-Related Data.**

1. Beginning within seven days after the Court's approval of this Agreement, and on an ongoing basis thereafter, Defendants shall collect and maintain the following data.

    a.  The name of any individual detained at the Jail at any point in the preceding 30 days and who self-identified as having OUD, was otherwise identified as having OUD, requested MOUD treatment, or was otherwise evaluated or considered a possible candidate for receiving MOUD treatment; and

    b.  As to each individual identified pursuant to section E.1.a. of this Agreement, the data identified in Exhibit 2, annexed hereto.

2. Beginning within 30 days after the Court's approval of the Agreement, on a monthly basis for one year, and on a quarterly basis for two years thereafter, Defendants shall deliver, via email to Class Counsel, and in tabulated format where feasible, the data described in section E.1. of this Agreement.

3.  Class Counsel shall be permitted, on notice to Defendants, to confidentially interview any Class Member via telephone or in person at the Jail. Defendants shall schedule such interviews to occur within a reasonable time not to exceed 48 hours following any request by Class Counsel, and shall take all reasonable steps to ensure those interviews occur as scheduled.

4.  Class Counsel shall be permitted, on 72 hours' notice to Defendants, to physically inspect the Jail to ensure compliance with section D of this Agreement.

5.  Class Counsel shall enter into an appropriate confidentiality agreement for the purpose of preventing the unconsented public disclosure of the identity of any person with OUD. Class Counsel's staff and agents (including any expert retained to advise the Monitor) shall be subject to the same access rights and confidentiality limitations as Class Counsel.

6.  Defendants shall pay Class Counsel's reasonable attorney's fees and costs for work reasonably undertaken by Class Counsel under section E of this Agreement to assess Defendants' compliance with this Agreement. Such work may include reviewing and analyzing data provided pursuant to section E.2 of this Agreement, conducting interviews pursuant to section E.3. of this Agreement, and inspecting the Jail pursuant to section E.4. of this Agreement. Fees and costs under this provision shall not exceed $40,000 per year for up to three years, and shall be paid annually.

7.  Between 90 and 100 days after the Court's approval of this Agreement, the Parties shall meet and confer over the status of Defendants' implementation of this Agreement.

**F. Enforcement.**

1.  The Court shall retain jurisdiction over this action to enforce this Consent Decree.

2.  Subject to section F.3. of this Agreement, the Parties shall observe the following process in attempting to resolve any instance of alleged noncompliance with this Consent Decree.

    a.  If Plaintiffs believe Defendants have failed to comply with any material term of this Agreement, Class Counsel shall notify Defendants in writing of facts supporting that belief.

    b.  Defendants shall be afforded seven days from their receipt of such notice to confer with Class and/or remedy the non-compliance.

    c.  Within seven days after receiving a notice of alleged noncompliance under section F.2.a. of this Agreement, Defendants shall respond in writing either by confirming that the alleged non-compliance has been

resolved or providing a detailed explanation why the alleged non-compliance has not been resolved.

    d.  Following the seven-day period for Defendants to respond and/or remedy the alleged noncompliance, if Plaintiffs believe the noncompliance persists, the Parties shall meet and confer within seven days to resolve the issue(s).

    e.  If alleged noncompliance has not been resolved within seven days after the parties meet and confer under section F.2.c. of this Agreement, Plaintiffs may file a motion with the Court seeking enforcement of this Agreement and other available remedies.

    f.  If the Court finds Defendants have failed to comply with any material terms of this Agreement, the Court may, without limitation on other remedies the Court may order under section F.2.e. of this Agreement, extend for a reasonable and appropriate period Defendants' obligations under section E. of this Agreement.

    g.  If Plaintiffs moves to enforce any aspect of this Agreement and Plaintiffs are the prevailing party with respect to the dispute, Defendants shall pay Plaintiffs' reasonable attorney's fees and costs, including expert costs, to be determined by the Court.

3. Notwithstanding the other provisions of this section, nothing shall prevent Plaintiffs from seeking immediate court relief if Plaintiffs or their counsel reasonably believe Defendants' noncompliance with the Agreement poses an imminent risk of serious harm to any class member.

## G.  Attorney's Fees and Costs.

1. Defendants shall pay Class Counsel, within 30 days of the Court's approval of this Agreement, in the amount of $352,310.10, in satisfaction of Plaintiffs' claims for attorney's fees and costs in this action. This provision does not limit Plaintiffs' entitlement to fees and costs under sections E.6. and F.2.g. of this Agreement.

2. If payment of the settlement amount specified in section G.1. of this Agreement has not been made by the thirtieth day after the Court approves this Agreement, interest on any unpaid portion of that amount shall accrue at the statutory rate prescribed by 28 U.S.C. § 1961 beginning on the thirty-first day.

## H.  Miscellaneous.

1. The Parties stipulate and jointly request that the Court find the relief described in this Agreement is narrowly drawn, extends no further than necessary to correct

the alleged violations of federal rights, and is the least intrusive means necessary to correct the alleged violations of those federal rights; and thus complies with 18 U.S.C. § 3626(a)(1)(A).

2.  The Parties will cooperate with each other to effectuate and implement all terms and conditions in this Agreement, including, without limitation, by providing, at Defendants' cost, such notice to class members as the Court may require; by taking all steps necessary to seeking the Court's approval of this Agreement and the Court's final order and entry of the decree in this case.

3.  The terms of this Agreement are binding on Plaintiffs; Defendants, in their official capacities; and Defendants' successors in office, employees, and agents.

4.  The undersigned representatives for each of the Parties to this Agreement certify that each is authorized to enter the terms and conditions of this Agreement.

5.  This Agreement can be modified only with Court approval, either pursuant to Rule 60 of the Federal Rules of Civil Procedure or on written consent of the parties.

6.  This Agreement represents the entire agreement among the Parties concerning the action.

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

By: */s/ Antony P. F. Gemmell*

Antony P. F. Gemmell
125 Broad Street, 19th Floor
New York, New York 10004
agemmell@nyclu.org
212-607-3320

*Counsel for Plaintiffs and the Class*

Dated: March 26, 2024

BARCLAY DAMON LLP

By: */s/ Kayla A. Arias*

Kayla A. Arias
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
karias@barclaydamon.com
315-413-7227

*Counsel for Defendants*

Dated: March 26, 2024

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated: _____, 2024
        Utica, New York

**EXHIBIT 1**

*Notice to Class Members*
*M.C. v. Jefferson County*, 6:22-cv-190 (N.D.N.Y.)

# <u>NOTICE</u>: YOUR RIGHT TO TREATMENT FOR OPIOID ADDICTION AT THE JEFFERSON COUNTY JAIL

**Attention:** If you have an addiction to opioids (a condition also known as "opioid use disorder"), you may be entitled to medication-based treatment for your condition at the Jefferson County Jail. This medication for opioid use disorder, or "MOUD," includes methadone and buprenorphine in various forms, such as Suboxone and Sublocade.

A class-action lawsuit, *M.C. v. Jefferson County*, was filed in federal court regarding the availability of MOUD at the Jefferson County Jail. This lawsuit has resulted in a settlement. You can view the settlement at www.nyclu.org/mclitigation or request a copy using the information below.

**Your rights under the consent decree:**
- **If you already have a prescription for MOUD when you enter the Jail, the Jail is required to continue providing your prescribed MOUD treatment.**
- **If you believe you need MOUD to treat your opioid addiction, you have a right to request MOUD treatment at any time during your incarceration at the Jail. For example, you may make the request at intake or later during your incarceration through a sick call.**
- **When you make a request for MOUD treatment, the Jail is required to provide you with a medical assessment to determine whether you are eligible for treatment.**

If you face any problems with MOUD treatment at the Jefferson County Jail or would like a copy of the settlement, please contact the New York Civil Liberties Union:

- By mail:        New York Civil Liberties Union
                  Attn: M.C. Settlement
                  125 Broad Street, Floor 19
                  New York, NY 10004
- By email:       mcsettlement@nyclu.org
- By phone:       212-607-3300

**EXHIBIT 2**

**Provision of Compliance-Related Data**

As to each individual identified pursuant to section E.1.a. of this Agreement, Defendants shall provide the data identified below.

<u>General Information</u>
1. Date of Birth
2. Gender
3. Race

<u>Intake to Facility and Screening for MAT Program</u>
1. Date and time of admission to the Jail
2. Basis for custody (e.g. pretrial, post-conviction, etc.)
3. Whether any consent for treatment and release of information forms were signed during initial screening
   a. *If yes,* for which entity (e.g., Primecare, Credo)
   b. *If no*, whether any refusal forms signed
   c. *If no*, whether individual was educated of risks associated with drug and alcohol intoxication and withdrawal
4. Date and time of screening pursuant to section B.3.c. of this Agreement.
5. Date and time of referral for medical provider assessment for MOUD evaluation pursuant to section B.3.d. of this Agreement.
6. Basis for medical provider assessment (request, positive drug screen, etc.)
7. Date and time of medical provider assessment for MOUD evaluation
   a. *If assessment did not occur within 12 hours of a request or referral for MOUD treatment pursuant to section B.6.b. of this Agreement*, the reason(s) for such delay.
8. Date and time of completion of MAT Initiation form
9. Name and title of medical professional who performed MOUD evaluation
10. Decision on MOUD treatment following evaluation
    a. *If denied MOUD treatment*, basis for denial
11. Date and time of completion of MAT Verification and Order form
    a. *If MAT prescription could not be verified,* whether individual was referred for withdrawal management and/or assessment for OUD
12. Whether incarcerated individual received MOUD treatment prior to entering the Jail, or whether incarcerated individual was inducted on MOUD at the Jail

<u>MOUD Treatment</u>
1. Name of MOUD prescribed
2. Dosage of MOUD prescribed
3. Date and time of first MOUD dose
4. Name of MOUD received
5. Dosage of MOUD received

6. Provider of MOUD treatment (PCM, Credo, etc.)
7. Date(s) of completion of any MAT Follow-Up form(s)
8. Date of any change in MOUD modality and or dosage (incl. tapering, removal, etc.) Specific basis for any change in MOUD treatment, including tapering or withdrawal, pursuant to section B.8. of this Agreement.

Release Planning
1. Date of discharge from JCCF
2. Form of release planning provided (e.g. medication bridge, last dose letter, etc.)
3. *If referred,* name of individual's community-based MAT provider